IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| MARY EDMONDSON,<br><br>*Plaintiff*,<br><br>v.<br><br>CHRISSHELTON RECOVERY LLC and JEREMY SISK,<br><br>*Defendants*. | CIVIL ACTION NO.<br>**3:24-cv-00076-TES** |

ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE

Plaintiff Mary Edmondson brought claims against Defendants Title Max, Inc., Chrisshelton Recovery LLC ("CSR"), and Jeremy Sisk ("Sisk"). [Doc. 1]. She alleges that Defendants attempted to illegally repossess her vehicle in violation of the Fair Debt Collection Practices Act and Georgia statutory law. [*Id.* at ¶ 3]; 15 U.S.C. § 1692; O.C.G.A. § 11-9-609(b)(2). Shortly after filing her Complaint, Plaintiff dismissed her claims against Title Max, Inc., leaving Defendants CSR and Sisk. [Doc. 9]. Sisk filed a Motion for Summary Judgment [Doc. 37], and CSR filed a Motion for Partial Summary Judgment [Doc. 39] along with a Motion to Strike Plaintiff's Amended Complaint [Doc. 38]. The Court addresses each below.

### A.    FACTUAL BACKGROUND

There are few undisputed facts here. In December of 2023, Plaintiff took out a

loan with TitleMax. [Doc. 37-1, ¶ 2]. She secured this loan with her 1998 Dodge Dakota. [*Id.*]. Plaintiff eventually fell behind on her payments on the loan, so TitleMax contracted with CSR to repossess the Dakota. [*Id.* at ¶¶ 3–4]. CSR then contracted with Sisk to carry out the repossession. [*Id.* at ¶ 5]. The attempted repossession occurred on February 12, 2024. [Edmondson Depo., p. 43:21–24]; [Sisk Depo., p. 81:8–12]. It was raining, so the ground was soaking wet when Sisk arrived at Plaintiff's home that afternoon. [Edmondson Depo., p. 36:19–20]; [Sisk Depo., p. 42:18–21]. From there, each person on the scene tells a different version of the events that unfolded.

Plaintiff says she was at home and thought she heard a truck coming up her driveway. [Edmondson Depo., pp. 35:24–36:8]. So, she went outside and saw a white tow truck on her property. [*Id.* at p. 36:4–8]. She ran over to the truck and told the driver—Sisk—"to get the hell off my property right now." [*Id.* at p. 36:9–11]. She then asked him what he was doing there, and he replied by asking her about the Dakota. [*Id.* at p. 36:11–14]. Plaintiff told him the Dakota wasn't there and repeated her demand for him to leave. [*Id.*]. Sisk laughed and "gunn[ed]" his engine, so Plaintiff started "screaming hysterical." [*Id.* at p. 36:14–25]. Sisk's truck then took off down the bank, and Plaintiff ran inside the house to get her phone and call Robbie Towler, who lived with her. [*Id.* at pp. 7:5–9, 37:1–2]. Although Towler had left for the store, he said he would come right back. [*Id.* at p. 37:3–7].

Plaintiff came back outside to find Sisk still gunning the engine and spinning his

tires in the mud. [*Id.* at p. 37:11–14]. After some time, he winched the tow truck out of the mud using a nearby tree. [*Id.*]. Plaintiff repeated her demand for him to get off her property. [*Id.*]. But Sisk took off across her yard, hit her propane tank, broke her tractor, and got stuck again. [*Id.* at p. 38:5–23]. So, Plaintiff started screaming at Sisk. [*Id.*]. At this point, Robbie pulled up and stood outside his truck watching. [*Id.*]. Sisk then drove over the area of Plaintiff's septic tank and got stuck a third time. [*Id.* at p. 39: 8–16]. Robbie pulled Plaintiff away from the scene to calm her down while Sisk called his boss to come pull him out. [*Id.* at p. 40:5–18].

Towler's story is slightly different. He says he was at the store when Plaintiff called obviously upset. [Towler Depo., pp. 12:24–13:1]. He drove back to the house, got Plaintiff, and the two of them left together. [*Id.* at p. 13:3–6]. Towler claims he was driving the Dakota that day and was not home when the events that led to this lawsuit started. [*Id.* at p. 13:7–12]. He did not speak to Sisk at all. [*Id.* at p. 32:18–25]. He "guess[es] somebody drove across the yard and made a heck of a mess," and "even busted the septic tank lines." [*Id.* at p. 14:12–15]. Towler also says Sisk knocked the propane tank off its concrete blocks. [*Id.* at p. 18:21–22]. He did not actually see Sisk knock the propane tank off the blocks, but it was off the blocks when they came back to the house later that night. [*Id.* at p. 34:6–12].

As expected, Sisk tells yet another story. CSR and another contact called Sisk on February 12, 2024, to tell him Plaintiff had the Dakota at her house. [Sisk Depo., p. 23:7–

9]. Sisk pulled into Plaintiff's driveway and saw the Dakota. [*Id.* at p. 32:9–16]. As he was looking at the VIN number, Plaintiff and Towler came out of the house. [*Id.* at pp. 33:15–34:1]. They asked Sisk what he was doing, and he responded that he was there to take the truck. [*Id.* at p. 34:11–23]. Towler then responded by saying "I'm going to kill you," and ran into the house only to reemerge with a shotgun. [*Id.*]. Plaintiff pulled Towler back inside, but Towler reemerged, cranked up the Dakota, and drove away. [*Id.* at p. 35:2–15]. Sisk got in his truck to leave but it slid down a small embankment. [*Id.*]. He sat there in the mud, while Plaintiff yelled at him to get off her property and called him names. [*Id.* at p. 38:1–13]. He was stuck for two to three hours while Christopher Shelton of CSR was on the way to get him. [*Id.* at p. 38:14–25]. During that time, Plaintiff returned every five or 10 minutes to yell at him to leave. [*Id.*]. He tied a winch to a tree which got the truck turned around in the mud but couldn't get it out. [*Id.* at p. 39:9–21]. Shelton showed up, hooked a winch from his truck to Sisk's truck, and pulled him out. [*Id.* at pp. 39:22–40:11]. The two of them then left. [*Id.*].

Finally, Shelton has yet another slightly different version of events. Sisk called Shelton and told him he was stuck in the mud. [*Id.* at p. 44:15–16]. Shelton was in Warner Robins, so it took him several hours to get to Sisk, but it was still daylight when he arrived. [*Id.* at pp. 44:18–24, 46:9]. Neither Plaintiff nor Towler were there. [*Id.* at p. 58:6–11]. Sisk told him that a guy (Towler) had pulled a shotgun out, hopped in the Dakota, driven around the yard, and then left. [*Id.* at p. 47:5–8]. Shelton pulled Sisk's

4

truck out of the mud, and within five minutes they were gone. [*Id.* at p. 48:15–16].

As a result of the February 12, 2024, events, Plaintiff filed an Amended Complaint alleging that CSR, through Sisk (its agent), violated state and federal statutory prohibitions on unfair debt collection. [Doc. 37-1, ¶ 1]. To help establish damages, Plaintiff relies on invoices and estimates from various companies to fix her yard, lawn mower, and septic system:[1]

| Company Name | Estimate/Invoice Amount |
| --- | --- |
| "Lonnie Green Lawn Design" | 17,172 |
| "Turkey Mountain Camper Rentals" | 12,636 |
| "Lemn Fresh Environmental Sanitation" | 6,642 |
| "2024 Simplicity Broadmoor™ 25/52 SCS (2691674)" | 7,899 |
| "Custom Septic Service and Repair" | 38,350 |
| "Acme Co." | 5,700 |
| "Roto-Rooter" | 7,256 |
| Total: | 95,655 |

### B.   <u>LEGAL STANDARD</u>

A court must grant summary judgment "if the movant shows that there is no

---

[1] All information in the table of invoices comes from [Doc. 37-6].

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[2] "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide

---

[2] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

"affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

At this stage, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

The nonmovant's evidence is to be believed, and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[I]f a reasonable jury could make

more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment." *Sconiers*, 946 F.3d at 1263.

### C.    DISCUSSION

First, CSR's Motion to Strike Plaintiff's Amended Complaint. [Doc. 38]. CSR argues that some of the invoices Plaintiff uses to establish damages are fabricated "by [Plaintiff] for purposes of fraudulently attempting to game the system to secure a significant award of damages." [*Id.* at p. 3]. Specifically, CSR argues that "[t]he businesses do not exist, they are located at fictious non-existent addresses, their invoices bear the markers of fraud, and they cannot be located even with the assistance of a private investigator . . . ." [*Id.*]. CSR asks the Court to sanction Plaintiff by striking Plaintiff's Amended Complaint. [Doc. 38, p. 4]. The Court declines to do so.

Courts may "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). The key to exercising this power is a finding of bad faith. *Id.* "[T]he concept of bad faith clearly embraces fabricating or destroying evidence and then lying about doing so." *Oniha v. Delta Airlines, Inc.*, No. 1:19-cv-5272, 2021 WL 4930127, at *4 (N.D. Ga. Sept. 13, 2021). Sanctions can include outright dismissal of a lawsuit. *Chambers*, 501 U.S. at 45. "To determine whether outright dismissal is an appropriate sanction, the Eleventh Circuit requires a lower court to make two findings: '[t]here must be both a clear record of

willful conduct and a finding that lesser sanctions are inadequate.'" *Frazier v. Se. Georgia Health Sys., Inc.*, No. 2:21-cv-21, 2024 WL 889994, at \*7 (S.D. Ga. Mar. 1, 2024) (quoting *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006)).

For a clear record of willful conduct, it is CSR's burden to prove that Plaintiff fabricated the invoices. *Frazier*, 2024 WL 8899994, at \*10. "The evidentiary standard for imposing a sanction of dismissal is less clear, but courts in the Eleventh Circuit normally require clear and convincing evidence of the offending party's willful misconduct."[3] *Id.* (citing *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-cv-1479, 2020 WL 2308319, at \*4 (N.D. Ala. May 8, 2020)). "Clear and convincing evidence is a 'demanding but not insatiable' standard, requiring proof that a claim is highly probable." *Nejad v. Att'y Gen., State of Georgia*, 830 F.3d 1280, 1289 (11th Cir. 2016) (quoting *Bishop v. Warden, BDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013)). "Highly probable is a standard that requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Id.* (quoting *Ward v. Hall*, 592 F.3d 1133, 1177 (11th Cir. 2010)).

CSR points to five of Plaintiff's invoices/estimates as fraudulent: those from Lonnie Green Lawn Design, Lemon Fresh Environmental Sanitation, Custom Septic

---

[3] CSR argues that clear and convincing is the incorrect standard here because it has not been adopted by the Eleventh Circuit. [Doc. 54, p. 4]. Instead, CSR proposes that to obtain dismissal as a sanction it must show that Plaintiff "engaged in a clear pattern of delay or willful contempt (contumacious conduct); and . . . the district court specifically finds that lesser sanctions would not suffice." [*Id.* at p. 9 (quoting *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005)]]. Regardless of the standard, the Court still would not dismiss Plaintiff's case for the same reasons as shown below.

9

Service and Repair, Acme Co., and Turkey Mountain Camper Rentals. [*Id.* at p. 5]. As evidence of their falsity, CSR points out that there are no last names for the contacts on these documents, these businesses do not appear on the Georgia or Florida Secretary of State's business search or Georgia's state certified septic contractor list, and many of the addresses on these invoices do not exist. [*Id.* at pp. 6–7]. Having exhausted all means Plaintiff provided for contacting these businesses, CSR hired a private investigator who also could not locate the businesses. [*Id.* at pp. 8–9]. In her Response, Plaintiff provides alternate explanations for the invoices: the companies were "fly-by-night operations" that have closed, or the individuals who made the documents were themselves looking to scam Plaintiff.[4] [Doc. 47, p. 3]. But CSR says that "it is so unlikely as to be nearly impossible for five different businesses to all have the same deficiencies." [Doc. 54, p. 2].

While CSR has provided evidence that absolutely questions the authenticity of these documents, it simply has not shown by clear and convincing evidence that Plaintiff manufactured the invoices and is "highly responsible" for the documents' shortcomings. In fact, the only evidence that Plaintiff contributed to the documents is her email address on the Acme Corp. invoice, which can be explained with alternate explanations such as a representative filling out the document while she provided the representative with her information. Bottom line, without evidence that Plaintiff herself

---

[4] Plaintiff didn't submit an affidavit stating she wasn't the one who made these invoices/estimates in response to Defendants' allegations. She did, however, deny creating them in her deposition. [Edmondson Depo., p. 149:12].

contributed to the documents—even evidence less absolute than the plaintiff in *Frazier* who held the phone and filmed himself—CSR doesn't reach the highly probable standard. 2024 WL 889994, at *1. The Court exercises its considerable discretion and will not issue the ultimate sanction of dismissal on this current record.

Even if CSR had met its considerably high burden, dismissal would not be warranted here because lesser sanctions could suffice. *Id.* at *7; [Doc. 54, p. 9]. Namely, the Court could simply exclude any falsified evidence. While that may come later if Plaintiff can't meet the requisite evidentiary standard to admit the suspect invoices, for now, the Court declines to dismiss her case. The Court **DENIES** CSR's Motion to Strike. [Doc. 38].

Now, on to the motions for summary judgment. Without getting into the specifics of each party's arguments, the Court can easily point out plenty of disputed material facts in this case, perfect for a middle Georgia jury to sort out.

For example, where was the Dakota? Was it on Plaintiff's property during the repossession, or was Towler driving it all day? [Edmondson Depo., p. 36:11–14]; [Towler Depo., p. 13:7–12]; [Sisk Depo., p. 32:9–16]. Was Towler present with Plaintiff when Sisk arrived, or did he have to come back to the property from running errands? [Edmondson Depo., pp. 37:1–2]; [Towler Depo., pp. 12:24–13:1]; [Sisk Depo., pp. 33:15–34:1]. Did Sisk continue onto Plaintiff's property after Plaintiff told him to get off her property, or was he stuck in the mud trying to leave? [Edmondson Depo., p. 36:14–15];

[Sisk Depo., pp. 37:2–38:6] Did Sisk hit the propane tank? [Edmondson Depo., p. 38:5–12]; [Towler Depo., p. 34:6–12]; [Sisk Depo., p. 39:19–20]. Did Sisk hit the tractor? [Edmondson Depo., p. 38:5–12]; [Sisk Depo., p. 69:9–10]. How many times did Sisk get stuck in the mud? [Edmondson Depo, p. 39:8–16 (three times)]; [Sisk Depo., p. 38:2–25 (indicating once for hours)]. Who crushed the septic lines? [Sisk Depo., pp. 45:5–19, 47:4–13]; [Edmondson Depo., pp. 39:8–19, 124:14–20]. These issues and more require a jury to determine. *Sconiers*, 946 F.3d at 1263.

Nevertheless, the Court briefly addresses each party's specific arguments. Sisk argues that Plaintiff "failed to introduce any evidence on which a jury could base a finding of liability against" him. [Doc. 37-2, p. 10]. In support of his Motion, Sisk presents two arguments. He argues first that his attempted repossession of Plaintiff's vehicle was not wrongful. [*Id.* at p. 6]; [Doc. 50, p. 2]. Plaintiff responds that Sisk's attempted repossession was unlawful because he breached the peace during the repossession. [Doc. 49, pp. 4–5]. But, there is a genuine dispute of material fact as to what happened during the repossession, including whether Sisk continued with the repossession after Plaintiff told him to leave, and even whether the Dakota was at the scene during the repossession. [Edmondson Depo., pp. 36:14–15, 37:1–2, 39:8–16]; [Sisk Depo., pp. 33:15–34:1, 37:2–38:25]; [Towler Depo., pp. 12:24–13:1].

Sisk next argues that Plaintiff did not "introduce any evidence showing that the conduct or damages alleged in her Amended Complaint were caused by" Sisk. [Doc. 37-

2, p. 6]. Specifically, Sisk argues that Plaintiff needs an expert to show "the state of the septic tank immediately prior to, and following, the incident that is the subject of this lawsuit, as well as the extent of damage allegedly caused by [Sisk], and all associated services and costs needed for restoration . . . ." [*Id.* at p. 7]. Additionally, Sisk points to Plaintiff's allegedly faulty invoices as failure to establish any other damages. [*Id.* at p. 8]. In response, Plaintiff argues that she does not need an expert witness for the septic tank because she saw Sisk drive over the septic field, and then sewage came into her house. [Doc. 49, pp. 9–10]. She also argues that she can still recover emotional distress and the $1,000 statutory damages from the FDCPA. [*Id.* at pp. 9–13].

Similarly, CSR argues for partial summary judgment in its Motion, saying that "Plaintiff cannot establish she sustained any item of her claimed special damages . . . ." [Doc. 39-1, p. 9]. CSR also argues that Plaintiff's invoices are not trustworthy, so they cannot be admissible at trial and therefore cannot be considered at the summary judgment stage. [*Id.* at pp. 8–9]. Plaintiff is also required, according to CSR, to have an expert testify about the damage to her septic tank. [*Id.* at p. 8]. Similar to her response to Sisk's Motion, Plaintiff points to emotional distress damages and the $1,000 statutory minimum recoverable under the FDCPA in her Response. [Doc. 48, p. 4]. She also argues that the invoices can be placed in an admissible form at trial by calling representatives from those companies to testify, and she doesn't need an expert for causation here. [*Id.* at pp. 6–7].

With most of the factual allegations disputed, it is not surprising damages are also disputed. But the Court cannot weigh credibility of evidence at this stage. *Sconiers*, 946 F.3d at 1263. For the invoices, Plaintiff has offered to call representatives from the companies to testify at trial. [Doc. 48, pp. 6–7]. Since courts can consider evidence at summary judgment "that could be presented in an admissible form" at trial, the Court can consider the invoices now.[5] *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001); *see also Anglin v. BI Lo, LLC*, No. 22-13912, 2023 WL 6232511, at *3 (11th Cir. Sept. 26, 2023); Fed. R. Civ. P. 56(c). Drawing all reasonable inferences in Plaintiff's favor as the nonmovant, Plaintiff has offered enough evidence potentially admissible at trial to avoid summary judgment. *Anderson*, 477 U.S. at 255.

As for the issue of expert witnesses—which was raised in both Motions—Plaintiff did not file any expert disclosures, and therefore may not use experts at trial. Would Plaintiff need an expert to testify about any scientific or technical details of a septic tank that may arise? Yes. *See* Fed. R. Evid. 702(a). Plaintiff may very well need that information to establish a claim. But, the Court will not foreclose Plaintiff from pursuing a claim about the septic tank at the summary judgment stage when there are

---

[5] To be clear, the Court is not ruling that Plaintiff's alleged witnesses from these companies will be able to testify at trial. The standard requires that the evidence "could be presented in an admissible form." *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001). Here, even though discovery ended and Plaintiff did not disclose the full names of these witnesses or disclose intentions for them to testify under Federal Rule of Civil Procedure 26(a), Rule 37(c)(1) means that the invoices "could be presented in an admissible form." [Doc. 34]; Fed. R. Civ. P. 26(a), 37(c)(1). Whether these witnesses will be able to testify is an issue for closer to trial should Plaintiff actually call them. For now, the Court is satisfied that it can consider the invoices/estimates at the summary judgment stage.

still genuine issues of material fact about whether Sisk even drove over the septic tank. [Sisk Depo., p. 45:5–19 (stating that he doesn't know where the septic tank was, but he did drive on the side of the house)]; [Edmondson Depo., p. 39:8–19 (stating that the "third time" Sisk got stuck in the mud, it was over Plaintiff's septic tank)]; [Edmondson Depo., p. 124:14–20 (stating that she is "not an expert," but detailing where the septic tank is based on her understanding)]; [Sisk Depo., p. 47:4–13 (stating that he did not see any of the white pipes indicating a septic tank in the area he was stuck)]. The Court will deal with further evidence issues closer to trial (or at trial) should it be necessary.

### D.   CONCLUSION

Since there are disputed material issues of fact that only a jury can decide, the Court **DENIES** both Sisk's Motion for Summary Judgment [Doc. 37] and CSR's Motion for Partial Summary Judgment [Doc. 39]. The Court also **DENIES** CSR's Motion to Strike [Doc. 38]. The case will continue to trial. The Court will shortly issue an order for the parties to confer and submit a consolidated pretrial order and will schedule the final pretrial conference as well as the trial of this case in the next few weeks.

**SO ORDERED**, this 26th day of March, 2026.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**